STATE OF MISSOURI, TO THE USE OF M. D. LEWIS, Respondent, *v.* MARCUS A. WOLFF ET AL., Appellants.

March 15, 1881.

1. An administrator's bond is not discharged by taking a new bond unless the latter is taken for cause specified in the statute, and the statute must be strictly complied with.

2. Section 39 of article 2 of the general administration law does not apply to public administrators, and in ordering a public administrator to give a new bond, the court acts under the provisions of the statute relating to public administrators.

3. A new bond given by a public administrator being merely cumulative, the sureties on the old bond are not thereby discharged.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

S. S. MERRILL, for the appellants.

W. L. SCOTT, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an action by the public administrator of St. Louis County, in charge of the estate of Florian Mueller and of the estate of Joanna Loeghngen. The plaintiff also sues to the use of the curator of Lena, Max, and Effie Mueller. Florian was the father, and Joanna was the mother, and Lena, Max, and Effie were brothers and sisters, of Frank Mueller, deceased, and distributees of his estate. The action is against defendants as sureties on the additional bond of Henry Gambs, once public administrator of St. Louis County, and is brought upon the bond.

Gambs was elected public administrator, and, in December, 1872, gave bond in the sum of $110,000, with Hirschberg, defendant Green, and Saler and Staehlin as sureties. The last two became insolvent. In June, 1873, on the application of one Wolfley, as an heir of Irwin, of whose estate Gambs had charge, Gambs was ordered to give an additional bond, and, on September 29, 1873, he filed the

bond sued on herein, of which the penalty is $70,000, and on which defendants Wolff and Green, and one Tilford, are sureties. At the March term, 1874, Gambs made final settlement of the Mueller estate, showing $999 in his hands, and was ordered to report the same for distribution at the next June term. This he never did; but was a defaulter, and resigned in November, 1874. These facts are alleged in the petition, and are admitted. The answers of Green and Wolff set up that defendants have paid on the bond an amount exceeding the penalty; and Wolff further says that the default which is the ground of this action, accrued before the bond sued on was executed. There was a trial by the court, and a finding and judgment for plaintiff.

It appears by a stipulation filed in the case, that, on December 24, 1874, defendants Green and Wolff, together with Hirschberg and Tilford, entered into an agreement in writing by which they bound themselves to furnish one-fourth the amount required to discharge all demands that should be presented against Gambs on account of estates in his hands, where no final settlement or order of distribution had been made prior to September 19, 1873. The agreement recites that Green and Hirschberg are the only solvent sureties on the first bond, and Green, Tilford, and Wolff the only solvent sureties on the second bond; that there may be some controversy between them as to their relative liabilities by reason of the fact that they were bound as sureties on the two bonds already mentioned; and that, as they are the only solvent sureties, the question of relative liability and contribution shall be settled in a way set out in the instrument, and which is immaterial here. It is admitted in the stipulation, that Green, Tilford, and Wolff paid together (each paying an equal amount) more than $70,000, on account of demands against Gambs, for estates in his hands where no final settlement or order of distribution had been made before September 19, 1873; and that Hirschberg also paid, on the same account, as much as any

of the other sureties, in addition to the payments made by them.

The money paid by the sureties was paid upon their general liability, and in the absence of any directions at the time it was received, as to its application, it is not to be applied to the discharge of the second bond. *Lewis* v. *Gambs*, 6 Mo. App. 138.

It is, however, contended by appellants that there was no general liability; that the defalcations paid by defendants are presumed by law to have occurred after the approval of the second bond, there being no evidence as to when they did occur; that the giving of the second bond discharged the first bond from all subsequent defaults; and that, therefore, there was nothing but the second bond to which these payments could apply. That such was not the understanding of Hirschberg and the defendants is evidenced by their agreement. That, however, is not perhaps material. It is clear that such was not the view taken by this court in the just cited case of *Lewis* v. *Gambs*. The question was not, however, examined there; it being taken for granted by the able and careful counsel for both sides in that case, as well as by the court, that the giving of the second bond was cumulative, and did not discharge the sureties on the first. The attention of the court was not, in that case, called to the fact that the second bond was given on application of a creditor; nor did that fact, perhaps, appear in the case at all.

The affidavit of Wolffey in the present case does not show any facts from which it appears that he is an heir or a distributee of the estate. The affiant claims to be an heir of David Irwin, but does not state that David Irwin died without issue. The affiant says that he is a descendant of William Irwin, his grandfather, brother of the full blood of David, but does not state that his grandfather is dead, or that his father is dead. The affidavit does not state that the estates in Gambs's hands are in excess of his official

bond; but states that the result of affiant's examination
is that the estates in Gambs's hands amount to "many thou-
sand dollars," and that "he believes" (he does not say
that he has reason to believe) that they are in excess of the
bond. The court, upon this suggestion, made an examina-
tion, and made the order for an additional bond. But we
do not think that the court, in this action, was proceeding
under sect. 36, chap. 2 of the administration law (Wag.
Stats. 75); nor do we think that sect. 39 of that chapter
applies to the case of public administrators.

The administration law, amongst its general provisions,
declares (Wag. Stats. 75, sects. 36–39), that any per-
son interested in an estate may make an affidavit that he
has good reason to believe, and does believe, that the pen-
alty of the administrator's bond is insufficient, and shall
give notice, and that if the court shall find the complaint to
be just, it shall order another bond, which, when given and
approved, shall discharge the former sureties from any lia-
bility of the principal after filing the same; and if such per-
son fail to give the bond required, his letters shall be revoked.
It is clear that the Legislature was not here contemplating
the case of a public administrator, to whom letters are not
issued, and whose position is very different from that of a
private administrator. The bond of a public administrator,
like that of a private administrator, is fixed by the court
upon his entering upon the duties of his office. But in the
case of a private administrator this is done with a reason-
able probability that the value of the estate is known, and
will not be materially increased during his term; or, at
least, that the court can see when fixing the bond what
is likely to be the liability under it. In the case of the
public administrator this is not so. He administers upon
an indefinite number of estates. The bond which he gives
upon entering upon office may at any time become wholly
inadequate, and cease to bear any proportion to his lia-
bility, owing to his taking charge of a new estate; or it

may cease to be adequate from the gradual increase in number and value of the estates administered upon. The administration law has a distinct article treating of the public administrator, his duties, and his bond, and of increasing his bond from time to time, as circumstances may require. It is to these provisions that we must look when determining whether the new bond in this case discharges the old one. Statutes that relate to the same person and thing, or the same class of persons or things, are *in pari materia.* Public statutes, or general laws made at different times and in reference to the same subject, or forming a united system which is to be harmonious and consistent, are *in pari materia.* It is to such statutes that the rules of construction *in pari materia* apply. But the general provisions of the administration law and the special provisions in regard to the public administrator *magis similes sunt quam pares.* The general provisions of the law in this respect are *in consimili materia;* but, for obvious reasons, they are not *in pari materia;* and, unless by express provision of the statute made applicable to the public administrator's bond, they do not apply to it.

The law in regard to the bond of the public administrator is found in the ninth article of the administration law. The second section fixes the minimum amount of the bond to be given by that officer before entering upon the discharge of his duties, prescribes the number of sureties and the condition, and goes on: "And the court may, from time to time, as occasion shall require, demand additional security of such administrator; and in default of giving the same within twenty days after such demand, may remove the administrator, and appoint another."

It is under the provision of this law, that the second bond in the present case was given. It is quite manifest that it was not the intention of the Legislature that the giving of such a bond should release the sureties upon the bond already

existing. The security is to be additional security, not a new security to replace that already existing. The court, in ordering such a new bond, may act of its own motion; but it may also act on the suggestion of any person claiming to be interested; and if an affidavit of such person is filed, as in the case of demand for a new bond from a private administrator, that does not alter the character of the action of the court.

The ninth section of the article on public administrators provides (Wag. Stats. 122, sect. 9), that, "in addition to the provisions of this chapter, he and his sureties shall have the same powers as are conferred upon, and be subject to the same duties, penalties, provisions, and proceedings as are enjoined upon or authorized against executors and administrators by this law, so far as the same may be applicable." Appellants contend that, by virtue of this provision, the sections of the general administration law, in regard to the giving of a new bond, are in all respects made applicable to the public administrator, and that, therefore, the giving of a new bond by him under direction of the court discharges the former sureties. We think that the section has no such meaning. It was obviously inserted to avoid a more specific enumeration of the powers and duties of the public administrator. It is not meant to require the public administrator to act in all respects as a private administrator. For instance: he is not bound, on taking charge of each separate estate, to make a new affidavit; nor need the court issue letters to him; nor does he give a separate bond in each estate. In cases where the article of the law specially applicable to him has a special provision in regard to his rights, duties, or powers, he is to be governed by that provision. And this section is not intended to bring a new bond given by the public administrator by direction of the court, within the provision of the general law in regard to a new bond given by a private adminis-

trator at the instance of a creditor or distributee of the estate.

The judgment in this case was in accordance with the facts in evidence or admitted, and we see no error to warrant its reversal. The judgment is affirmed. All the judges concur.